<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                         :
TARA WINNICKI, et al.,                   :
                                         :
            Plaintiffs,                  :
                                         :          Civil Action No. 01-3357 (JAG)
                  v.                     :
                                         :              **OPINION**
BENNIGAN'S, et al.,                      :
                                         :
            Defendants.                  :
_____ :

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motion for a new trial, pursuant to FED. R.

CIV. P. 59, by Plaintiffs Tara Winnicki, Kathleen Winnicki, and Raymond Winnicki (collectively,

"Plaintiffs").  For the reasons set forth below, Plaintiffs' motion will be denied.

<u>**BACKGROUND**</u>

The background to this case has been set forth in this Court's Opinion of February 9,

2006.  The case was tried before a jury during March of 2006.  On March 17, 2006, the jury

returned a verdict in favor of Defendant Steak & Ale of New Jersey, Inc.[1]  Judgment was then

entered in Defendant's favor.

_____

[1] Pled as Bennigan's, Bennigan's Grill and Tavern, and Metromedia Restaurant Group.

1

## ANALYSIS

**I.      Governing Legal Standards**

      **A.      <u>Standard for a Rule 59 motion for a new trial</u>**

Rule 59(a) of the Federal Rules of Civil Procedure allows a party to seek relief from a judgment by filing a motion for a new trial.  Grounds upon which a new trial may be granted include: 1) that the verdict is against the weight of the evidence; 2) that the damages are excessive; or 3) that the district court made substantial errors in the admission or rejection of evidence or in its instructions to the jury.  <u>See</u> <u>Montgomery Ward & Co. v. Duncan</u>, 311 U.S. 243, 251 (1940).  The decision whether or not to grant a new trial is committed to the sound discretion of the district court.  <u>Wagner v. Fair Acres Geriatric Ctr.</u>, 49 F.3d 1002, 1017 (3d Cir. 1995).

**II.     Plaintiffs' motion for a new trial**

      **A.      <u>Should the jury have received an instruction on strict liability?</u>**

Plaintiffs argue that this Court's refusal to instruct the jury that Defendant could be found strictly liable, pursuant to the New Jersey Products Liability Act, "for harm caused from serving a meal unfit for its intended purpose" warrants a new trial.  (Pls.' Br. 7.)  As Defendant contends, and as this formulation by Plaintiffs shows, giving the requested instruction could not have affected the outcome of the trial.  The jury answered in the negative this question: "Did the plaintiffs prove, by a preponderance of the credible evidence, that defendant Bennigan's served Tara Winnicki an unwholesome meal on June 25, 1999?"  Plaintiffs do not argue that "serving a meal unfit for its intended purpose" differs materially from "served an unwholesome meal."  Thus, even if the jury had been instructed in accordance with this strict liability theory, there is

no reason to believe that it might have determined that Defendant served a meal unfit for its intended purpose.  This Court need not reach the question of whether the refusal to instruct on strict liability, pursuant to the New Jersey Products Liability Act, was in error, since Plaintiffs have not shown that the outcome of the trial would have changed had the jury been so instructed, and thus that Plaintiffs suffered any prejudice.

      B.      <u>Should Plaintiffs have been allowed to introduce evidence of prior health inspections?</u>

Plaintiffs contend that this Court erred in precluding them from introducing evidence about salad dressing temperatures from previous Middlesex County Board of Health inspections.[2] Plaintiffs argue that this evidence would have been probative of both the reasonableness of Defendant's conduct, and the fitness of the meal in question for its intended purpose.  Neither of these contentions is persuasive.

First, as discussed above, the jury determined that Plaintiffs did not prove that Defendant served an unwholesome meal.  Evidence of salad dressing temperatures on prior occasions is more prejudicial than probative of the wholesomeness of the particular salad served to Tara Winnicki.  It is also more prejudicial than probative as to whether Defendant breached a duty of care in preparation of the meal in question.  The evidence in question was properly excluded. <u>See</u> Fed. R. Evid. 403.

Second, as Defendant argues, presentation of this evidence would have asked the jury to engage in speculation.  To arrive at a different outcome, it would have been necessary for the jury

---

[2] Plaintiffs sought to introduce evidence of salad dressing temperatures from inspections on April 26, 1999, October 29, 1998, and February 11, 1998.  Decedent ate the meal in question at Bennigan's on June 25, 1999.

to engage in speculation on two levels: first, to speculate about what the temperature of the salad dressing was on the day in question; and second, to speculate on the link between a high salad dressing temperature and the decedent's illness.  The three prior inspections were spread out over sixteen months prior to the alleged date of injury; their link in time was too remote.  Also, Defendant observes that Plaintiffs offered no expert testimony to establish a link between salad dressing temperature and the illness.  It is not error to prevent the jury from engaging in speculation on a matter uninformed by expert opinion.

This Court did not err in its decision to preclude the introduction of evidence about salad dressing temperatures from previous Middlesex County Board of Health inspections.  <u>See Deaktor v. Fox Grocery Co.</u>, 475 F.2d 1112, 1117 (3d Cir. 1973) (the Court may prevent evidence that is too speculative from reaching the jury).

C.      <u>Did Dr. DuPont's testimony constitute unfair surprise?</u>

Plaintiffs contend that, at trial, "over Plaintiffs' counsel's objection, defense counsel was permitted [] to elicit the opinion from Dr. DuPont that within reasonable medical probability, Tara Winnicki became afflicted with the Norwalk Virus <u>before</u> eating at Bennigan's . . ."  (Pls.' Br. 13.)  Plaintiffs argue – without help of any citation to the record – that this constitutes unfair surprise and was contrary to this Court's ruling in limine.  This argument is not supported by the record.

At a hearing on February 22, 2006, this Court heard oral argument on motions in limine, including Plaintiffs' motion seeking to bar Dr. DuPont from opining at trial as to alternative causes of decedent's illness.  Defendant's counsel summed up Dr. DuPont's reports and deposition testimony as follows: "[Dr. DuPont] is doing his own sort of differential diagnosis. . .

4

. By doing all of those aspects of a differential diagnosis, he has concluded that the Norwalk

Virus is most probably the cause of her condition, but I don't think he's absolutely sure of that

either and he said so." (Hearing Tr. 46:5-15, Feb. 22, 2006.) This Court then ruled:

> I think it's entirely permissible for Dr. DuPont to opine on essentially what he's
> done, which is his own differential diagnosis and I don't think that that's what Mr.
> Sternlieb's motion is focused on. Mr. Sternlieb, obviously, has notice about his
> conclusion, vague though it may be, with regard to Norwalk's Disease, but other
> than that, I don't think anything is permissible.

(Hearing Tr. 46:21-47:3, Feb. 22, 2006.) The Court then restated the ruling to clarify it: "Well,

let me refine my earlier statement to say in this particular instance, he will not be permitted to

opine on causation, other than Norwalk's Disease." (Hearing Tr. 47:12-16, Feb. 22, 2006.)

The record of the hearing clearly shows that Plaintiffs had notice that Dr. DuPont

concluded that Norwalk Virus most probably caused decedent's illness, and this Court

specifically ruled that Dr. DuPont could state this opinion in testifying at trial. Plaintiffs did not

take exception to this ruling at the hearing.

At trial, Dr. DuPont testified as follows:

> Q:    You have an opinion within a reasonable degree of medical probability as
>       to when Tara Winnicki might have been infected by the inoculum?
>
> A:    Well, I want to make one comment to the jury before I answer that, and
>       that is I believe she had Norwalk gastroneuritis. . . . The vomiting disease
>       she had, I believe it was Norwalk. This is the most common cause of
>       gastroenteritis in the United States. I believe she had an incubation period
>       of her disease somewhere between seven days and 14 hours. I do not
>       believe that the meal in question is involved. It's not in an incubation
>       period. It's too short. So I believe it is something that Ms. Winnicki
>       either she ate or she drank or somebody she came in contact with, at
>       school, perhaps, who has viral gastroneuritis who spread this to her, and it
>       occurred sometime between seven days and 14 hours.

(Trial Tr. 24:6-21, Mar. 14, 2006.) Plaintiffs did not object to this testimony at trial.

5

Dr. DuPont's testimony at trial falls within the scope allowed by this Court in its ruling in limine.  Dr. DuPont gave his opinion on Norwalk's disease and causation, as expressly anticipated at the in limine hearing.  Plaintiffs' claim of unfair surprise and their claim that Dr. DuPont's trial testimony was contrary to this Court's in limine ruling are meritless.

## **CONCLUSION**

For the reasons set forth above, this Court denies Plaintiffs' motion for a new trial.


    S/Joseph A. Greenaway, Jr.
    JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: August 28, 2006

6